# THE STATE v. WALKER LEE, Appellant.

### Division Two, May 26, 1921.

1. RAPE: Capital Case: Defendant No Counsel in Supreme Court: Duty of Court. In a prosecution for rape, where defendant was found guilty and sentenced to death and on his appeal to the Supreme Court was not represented by counsel, the court will make a thorough examination of the law and facts to ascertain whether defendant has had a fair and impartial trial and to determine whether he has been convicted upon substantial evidence.

2. ———: Indictment. In this case, while no assault has been made upon the indictment, the Supreme Court examined the same and finds it to be in proper form.

3. ———: Instructions Given. The instructions given to the jury by the trial court were not objected to by defendant as to either form or substance; and as they clearly, properly and fairly declared the law by which the jurors were to be governed in arriving at their verdict there was no error in giving instructions to the jury.

4. ———: Failure to Instruct: No Exception. In a prosecution for rape, where it does not appear from the record that defendant offered any instructions aside from those given nor does it appear that any request was made of the trial court to instruct upon any other branch of the case, outside of the questions properly covered by the instructions given, defendant's complaint in his motion for a new trial, that the court failed to instruct the jury upon all phases of the offense, is without merit; and especially so, as no exception was saved to the alleged non-direction of the court, in respect to said matter.

5. ———: Trial: Statements of Prosecuting Attorney. Where defendant was prosecuted for rape, an objection by defendant, while the jury was being empaneled, to a statement by the prosecuting attorney that defendant was charged "with raping a white woman" was without merit, the woman being present in court and testifying in the case and the court having sustained the objection on the theory that the indictment did not say she was a white woman but having told the prosecutor he could say to the jury that the evidence would show she was a white woman.

6. ———: ———: **Names of Witnesses Not on Copy of Indictment.** In a prosecution for rape, where no motion to quash the indictment was filed by defendant and no continuance was asked, it was not error to overrule defendant's objection to the testimony of several witnesses on the ground that their names were not endorsed on the copy of the indictment furnished defendant, the record in the Supreme Court showing that the indictment on file in the case had the names of such witnesses endorsed thereon and the alleged copy not being produced in evidence.

7. ———: ———: **Names of Witnesses Not on Original Indictment: Competent When.** In a prosecution for rape it is not error for the trial court over defendant's objection to permit witnesses to testify whose names were not endorsed on the original indictment where the prosecuting officer explained to the court that he had just learned of their importance.

8. ———: ———: **Evidence: Written Statement of Defendant: Admissions.** Where the defendant, after he had been arrested for rape, without any threats or promises from anybody, admitted his guilt and said he wanted to plead guilty, and afterwards in a written statement as to what occurred prepared at his request and signed by him he. denied that he had committed the rape, such admissions and such written statement were properly admitted in evidence.

9. ———: ———: **No Error.** The Supreme Court, after having read and considered the record in this case finds that there was no error of which defendant can legally complain, but on the contrary the case was carefully and well tried by the court and by counsel upon each side and there is nothing in the record to indicate that defendant had other than a fair and impartial trial before an unprejudiced jury; and the judgment is accordingly affirmed.

Appeal from Jackson Criminal Court.—*Hon. Ralph S. Latshaw,* Judge.

AFFIRMED.

*Jesse W. Barrett,* Attorney-General, *Robert J. Smith* and *Robert W. Otto,* Assistant Attorneys-General, for respondent.

(1) The court did not err in failing to instruct on all the law in the case. (a) This question is not be-

fore this court for review, for the reason that the record fails to show that defendant offered or requested such instructions, and fails to show that defendant excepted to the action of the court in failing to instruct on all the law in the case. State v. Snyder, 263 Mo. 668; State v. Pfeifer, 267 Mo. 29; State v. Goldsby, 215 Mo. 57; State v. George, 214 Mo. 262; State v. Epenschied, 212 Mo. 222; State v. Barnett, 203 Mo. 65. (2) (a) The court did not commit error in admitting the confession or statements of defendant. State v. Barrington, 198 Mo. 109-110; State v. Brooks, 220 Mo. 83; State v. Spaugh, 200 Mo. 596; State v. Armstrong, 167 Mo. 269; State v. Armstrong, 203 Mo. 557. (b) The court did not err in permitting State's witnesses to testify as to voluntary statements made by defendant. State v. Barrington, 198 Mo. 109-110; State v. Brooks, 220 Mo. 83. (3) (a) The court did not err in permitting witnesses to testify whose names had not been endorsed on the back of the indictment. State v. Barrington, 198 Mo. 66; State v. Jeffries, 210 Mo. 322; State v. Rasco, 239 Mo. 553. (b) This question is not before this court for review. The bill of exceptions or record does not disclose that there was any motion to quash the information, nor an application for a continuance filed upon the ground that the witnesses were not endorsed upon the indictment at the time of the trial. State v. Wilson, 223 Mo. 186; State v. Johnson, 118 Mo. 500; State v. Barrington, 198 Mo. 66. (4) The remarks of counsel complained of herein do not warrant reversal. Even if there had been the point was not saved by timely exceptions. State v. Rasco, 239 Mo. 579; State v. McMullin, 170 Mo. 632; State v. Baker, 209 Mo. 450.

RAILEY, C.—Appellant was charged by indictment, with the crime of rape. It is alleged, that on June 28, 1920, at the County of Jackson and State of Missouri, said defendant did feloniously and violently make an assault upon one Elizabeth Dahmm, and did forcibly and

against her will, feloniously ravish and carnally know her, the said Elizabeth Dahmm.

There was substantial evidence as to defendant's guilt offered on the part of the State, which tends to show the following facts; Mrs. Elizabeth Dahmm lived, with her husband, about two miles east of Independence in Jackson County, Missouri, about one-half block from the track of the Chicago & Alton Railroad. They owned about two acres of ground, which was used as a garden and orchard. Her husband was absent from home on the date hereafter mentioned, and Mrs. Dahmm, on said date, was at her home alone. The railway track is elevated above the ground on which Mrs. Dahmm lived. On the 28th day of June, 1920, an extra gang of laborers were at work on the Chicago & Alton Railroad, between Independence, Missouri, and the residence of Mrs. Dahmm. The defendant had been a member of this railroad gang and, on the morning of the 28th of June, 1920, quit work, but loafed around with the rest of said gang until about 1:30 o'clock in the afternoon of said day. Several of the railroad employees testified that after 1:30 o'clock above mentioned, they saw the defendant running down the railroad track beyond the home of Mrs. Dahmm and near her place; that he then had on a pair of blue overalls, and when they saw him about four o'clock, he had changed his pants and had on yellow overalls.

Mrs. Dahmm testified in substance, that she was standing at the front door of her house, when defendant approached and wanted some matches; that she went to get him some matches and on her return, while she was looking in some other direction, he struck her a violent blow on the side of the head, which rendered her unconscious; that when she came to, she was lying on the bed in another room, with the defendant on top of her, having sexual connection with her, and that he then struck her with a club, which he had in his hand, and rendered her unconscious; that after finally coming to,

she managed to go a short distance to the home of Mrs. Tutter, who afterwards called for a doctor, and had the Chief of Police at Independence notified as to the assault.

*Dr. M. P. Woods,* a physician at Independence, Missouri, of twenty years' standing, testified, that he was called to treat Elizabeth Dahmm on or about the 28th of June, 1920, in Mrs. Tutter's yard at about 5:30 p. m.; that he found her suffering from a shock, and she was in a contused condition; that he could not arouse her; that he found a number of wounds about her face and neck; a large contusion over the left eye, a cut across the right eye and to the skull; that there was a wound on the back and upper part of her head, on the right side, two and one-half to two and three-quarter inches in length; that she had, on the right side of her face, bruises, as if you could see the imprint of the object with which she must have been struck; that it was not a tear, but seemed to be a strike or knock; that her eyes were swollen, and one was shut; that her face was discolored, and she was bleeding from these various wounds and from her nose; that she had some marks on her neck, around her throat, and around the side of her neck; that there were marks of violence on her neck, finger prints and some scratches through the skin; that her condition was caused by violence.

*A. Tannehill,* a member of the police force, with Chief of Police Harris, went out to the scene of the trouble and Tannehill found, at the home of Mrs. Dahmm, in the bed-room, a puddle of blood on the bed, and some other blood on the floor, which had dried; that he found a stick thirty feet from the house lying in the weeds.

This stick was preserved, and introduced at the trial. The evidence on behalf of the State disclosed that the stick was shown to defendant after his arrest, and he admitted to the Chief of Police and others, that it was the stick with which he assaulted Elizabeth Dahmm.

After the assault, the defendant was at the station

about four o'clock p. m., preparing to leave for Glasgow, Missouri. None of the railroad men at that time, knew of the assault, and no one in the town knew of it, except Chief of Police Harris. Just before defendant took the train for Glasgow, he had a talk with Chief Harris, and volunteered the statement that "The man who committed that crime ought to be tarred and feathered out in the middle of the street, and I think I can give you some evidence." He then said to Chief Harris that two fellows had caught the train going east and if he would wire to Glasgow he might catch them. At this time, Mrs. Dahmm was in the sanitarium at Independence, having been taken there by Chief Harris.

The defendant took the train for Glasgow, and after a more minute description of the assailant had been obtained from Mrs. Dahmm, a telegram was sent, calling for the arrest of defendant. He ran nearly six miles, fleeing from the officer, before he was arrested. After being brought back to Jackson County, when approaching Independence, he asked Chief Harris to take him on to Kansas City, as he did not want to stop at Independence. The Chief complied with his request, and placed him in the jail at Kansas City, until the following morning. When the Chief came for defendant to take him to Independence, he protested against going, and said he wanted to plead guilty. *Without any threats or promises from anybody, he then told the Chief of Police and the Assistant Prosecuting Attorney, that he was guilty of the crime charged against him, and wanted to plead guilty.* At his request, a written statement as to what occurred, was prepared and signed by him, in regard to the assault, but he changed front and denied therein that he had committed the rape. Said statement was offered in evidence and is in words and figures following, to-wit:

"July 2, 1920.

"Statement of Walker Lee, made July 2, 1920, to Chief Harris and Will S. Guinotte, Ass't Pros. Atty. at

the office of the Prosecuting Attorney at Kansas City.

"My name is Walker Lee. I am 36 years old and a single man. I have lived at Roanoke, Missouri, all my life—my mother, Mary Jane Lee, is living there now. I came to Independence, Missouri, on June 19, 1920, and was employed by the Chicago & Alton Railway as a section hand. I worked on track near Alton Ave., which was about two blocks from Mrs. Dahmm's house. At night I slept in the boarding car with the other hands.

"I quit the job on the railroad the morning of the 28th of June, 1920. Lloyd Snoddy and Pat Casey, two colored boys who lived at Glasgow quit at the same time. We were going to Glasgow that night to get our pay. I shot 'craps' that morning and ate dinner about 12 o'clock at the boarding car. I loafed around after dinner about 2:00 o'clock I walked east on the tracks about two blocks where I passed a house that sits about 50 feet from the tracks. I walked on up the track a little ways and then came back and went down to this house to get a drink. A woman came to the door and I asked her for some matches and she said 'to come on in' and she gave them to me. There was a piece of stovewood by the door and I picked it up and held at my side. The woman asked me where I lived and what I was doing and I told her that I had been working on the railroad and was going home to Glasgow. Her head was turned away from me and I hit her over the head with the club. I do not remember how many times I hit her. I then ran out of the house and went back to the boarding car. I was passed down to Glasgow on the 5:27 train, and then to Mexico where I caught the Wabash to Moberly where I went to see my sister, Minnie Lee, who works at the Woodland Hospital. I came back to Slater Tuesday night and Tuesday morning, Wednesday morning the officers at Slater tried to arrest me. I got away and went to Galitan where I was arrested by two officers from Glasgow and taken back and confined in the jail at Glasgow, Mo. I was returned

to Independence by Chief Harris Thursday. This state-
ment is made of my own free will and accord no threats
or promises having been made by any one, but because
it is the truth.

"(signed) WALKER LEE.

"Witnesses.

"Will S. Guinotte."

The evidence shows that after defendant was arrest-
ed and brought to Jackson County, Mrs. Dahmm identified
him as the man who assaulted and raped her.

The only testimony offered in behalf of appellant,
was that given by himself, in which he testified that
he was thirty-seven years of age; that on the 28th of
June, 1920, after quitting his job he came back to the
bunk car and went to the railroad pond to take a swim;
that he found other boys in the pond and did not go
in, but watched the others for about one hour; that he
then came back, talked to the foreman, and, with the
other railroad employees, received a pass to go to Sla-
ter; that the police officer who brought him to Kansas
City, tried to get him to make a statement, by saying
there was a mob waiting for him; that Chief Harris
told him of the crime the day it was committed; that
he did not admit to the officers, that he had ever seen
the club before; that he did not go to the house of Eliz-
abeth Dahmm on the 28tth of June, 1920; that he did not
ask her for matches; that he did not have the conversa-
tion with her on said date; that there was no blood on
his hat and overalls and that he did not commit this
crime.

Other testimony in the case tends to corrobate the
statement to the effect that defendant was the man who
made the assault on Mrs. Dahmm, as heretofore stated.

The court gave five instructions covering the case,
which were not objected to by defendant, and the jury
thereafter returned into court the following verdict:

"We, the jury, find the defendant, Walker Lee,
guilty of rape as charged in the indictment and assess
his punishment at death."

· Defendant, in due time, filed motions for a new trial and in arrest of judgment. Both motions were overruled, he was thereafter sentenced and judgment entered, in accordance with the statute; and an appeal was duly granted him to this court.

I. Defendant is not represented here by counsel, although he has been convicted of one of the most atrocious crimes known to our law, that of rape. We, therefore, feel the responsibility devolving upon us, of making a thorough examination of the law and facts, to ascertain whether defendant has had a fair and impartial trial, and to determine whether he has been convicted upon substantial evidence.

While no assault has been made upon the indictment, we have examined the same and find it to be in

Indictment. proper form. [Sec. 3247, R. S. 1919; State v. Warren, 232 Mo. 185, 199; State v. Burries, 126 Mo. 565-6-7.]

II. The court gave five instructions to the jury, which were not objected to by appellant, as to either form or substance. They clearly, properly and fairly declared the law by which the jurors were to be governed

Instructions given. in arriving at their verdict. As no complaint was made, or objection urged, against the instructions *given,* we have not deemed it necessary to set them out.

III. It does not appear from the record, that defendant offered any instructions, aside from those given, nor does it appear that any request was made of the court, to instruct upon any other branch of the case, outside of the questions properly covered by the instruc-

Failure to Instruct. tions given. The complaint, therefore, in defendant's motion for a new trial, that the court failed to instruct the jury upon all phases of the offense, is without merit; and especially so, as no exception was saved as to the alleged non-direction of the court, in respect to said matter. [State v. Cook,

288 Mo.—4

207 S. W. l. c. 833; State v. Wansong, 271 Mo. l. c. 59, 195 S. W. l. c. 1002; State v. Pfeifer, 267 Mo. 23, 183 S. W. 337; State v. Smith, 190 S. W. 288; State v. Gifford, 186 S. W. l. c. 1060; State v. Taylor, 267 Mo. 41, 183 S. W. 299; State v. Snyder, 263 Mo. l. c. 668; State v. Sykes, 248 Mo. 708; State v. Chissell, 245 Mo. l. c. 554-5; State v. Dockery, 243 Mo. 592.]

IV.   Defendant, when the jury was being impaneled, objected to the statement of Mr. Curtin, assistant prosecutor, to the effect, that he was charged "with raping a *white* woman by the name of Elizabeth Dahmm" etc. The court sustained the objection on the theory, that the *indictment* did not say Mrs. Dahmm was a *white* woman, but told the prosecutor he could say to the jury, that the *evidence* would show Mrs. Dahmm was a *white* woman.   To our mind the objection made was without merit, as Mrs. Dahmm was present and testified in the case.   The jury could see from her appearance she was a *white* woman.   The court, however, sustained defendant's objection to said statement of the prosecutor, and no exception was saved as to the ruling of the court in respect to this matter.

*Remarks of Prosecuting Attorney.*

V.   Appellant's counsel objected to the testimony of several witnesses offered by the State, on the ground, that the *names* of said witnesses were not endorsed on the *copy* of the indictment furnished defendant.   The indictment on *file* in the case, as shown by the record here, *had* the names of said witnesses *endorsed* thereon. The alleged copy of the indictment, which defendant had, was not produced in evidence.   No motion to quash the indictment was filed by defendant, nor was a continuance of the case asked.   Even if the *original* indictment, did *not* have the names of witnesses endorsed thereon, defendant was in no condition to complain of the testimony of said witnesses,

*Names of Witnesses Not on Indictment.*

unless he moved to quash the indictment, or asked for a continuance to meet the testimony thus offered. [State v. Kehoe, 220 S. W. 1. c. 963; State v. Ferguson, 212 S. W. 1. c. 343; State v. Stegner. 276 Mo. 428, 207 S. W. 826; State v. Webb, 205 S. W. 187; State v. Ivy, 192 S. W. 733; State v. Jackson, 186 S. W. 990; State v. Robinson, 263 Mo. 1. c. 324; State v. Walton, 255 Mo. 233; State v. Rasco, 239 Mo. 1. c. 553-4; State v. Jeffries, 210 Mo. 302; State v. Barrington, 198 Mo. 23; State v. Myers, 198 Mo. 225.]

(a)  Defendant's complaint, that a few of the witnesses, whose names were not on the *original* indictment, were not competent to testify, by reason of that fact, is not tenable, as the prosecutor explained to the court, he had just learned of their importance, etc. Under the foregoing authorities, the court committed no error in permitting said witnesses to testify.

VI.  Appellant, in his motion for a new trial, contends that the court committed error, to his prejudice, in permitting the State to read to the jury, the *written* statement of defendant, heretofore set out. The evidence is clear and convincing, that no promises or threats were made to defendant as an inducement for him to sign said statement. On the contrary, we are satisfied from the record before us, beyond a reasonable doubt, that defendant voluntarily, and of his own free will and accord, made the statement aforesaid, as well as the oral admissions relating to his guilt, etc. The court, therefore, committed no error in permtting said statement to be read in evidence; and likewise committed no error, in permitting Chief Harris and Judge Pendleton to testify, as to the admissions made in their presence by defendant, as to his guilt and connection with the crime charged against him. [State v. Thomas, 250 Mo. 1. c. 211; State v. Brooks, 220 Mo. 1. c. 83-4; State v. Armstrong, 203 Mo. 1. c. 558-9; State v. Spaugh, 200 Mo. 1. c. 596-7; State v. Barrington, 198 Mo. 1. c. 109-10; State v. Jones, 171

*Written Statement of Defendant.*

Mo. l. c. 406; State v. Meyers, 99 Mo. l. c. 119; State v. Patterson, 73 Mo. 695.]

VII.    After reading· and considering the record herein with pains-taking care, we have not been able to find any error of which defendant can legally complain. The case was carefully and well tried by the court, and counsel upon each side.    There is nothing in the record to indicate that defendant had any other than a fair and impartial trial, before an unprejudiced jury.    It is to the credit of the State, that a case of this character has been tried within its limits, and punishment administered to a person found guilty of the detestable crime of rape, under the orderly administration of legal procedure, rather than by a resort to mob law.

Case
Well Tried.

The judgment of the trial court is affirmed, and the cause remanded to the criminal court aforesaid, to be proceeded with in accordance with its judgment. *White* and *Mozley, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court.    All of the judges concur.